# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **TONY ARCHIE** | **CIVIL ACTION NO. 3:13-cv-3185** |
|     **LA. DOC #430244** | |
| **VS.** | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **STEVE MAY, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

*Pro se* plaintiff Tony Archie, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on December 4, 2013.  Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (DOC); he is incarcerated at the Caldwell Correctional Center (CCC) and complains that prison officials used excessive force against him and thereafter wrongly confined him to administrative segregation, hospitalized him without notifying his family, and refused to respond to his grievances.  He sued Caldwell Parish Sheriff Steve May, CCC Warden Chris Fredericks, Capt. Tim Diel, Lt. Michael Crane and Corrections Officer Gaskill and prayed for compensatory damages and a transfer to a DOC facility. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

### *Statement of the Case*

Plaintiff's original complaint [Doc. 1] did not articulate his claims for relief. Instead, he attached thereto a grievance dated September 26, 2013.  Therein he claimed that on September

26, 2013, he was called out from his cell for a "random shakedown." He was strip searched by Lt. Crane. During the search plaintiff was commanded to open his hand. He refused. Thereupon Crane sprayed him with a chemical agent (Foxx Mace). Plaintiff then "hit the can" of chemical agent and was then "Tazed" by Officer Gaskill. He was then led to the shower by Officer White and then placed in front of a fan to lessen the burning caused by the chemical agent.  Thereafter, White transported plaintiff to the hospital for treatment. While at the hospital, Capt. Diel questioned plaintiff about drugs and cell phones. Plaintiff faults Diel for failing to inquire about his health and for failing to notify plaintiff's family about his hospitalization.

After an undisclosed period of time, plaintiff was returned to CCC. He claimed that he is unable to remember what transpired over the course of the next 48 hours, but also claimed that he was told by other inmates and staff that during that period he was returned to the hospital for treatment and, that at some time during his black-out he urinated in his prison clothing. Thereafter, his attempts to speak to Capt. Diel during the course of the next 10 days proved futile. Plaintiff claimed that the defendants violated "...Dept. Rules and Regulations of the Statutes and Creeds for all to follow..."

On January 2, 2014, plaintiff was directed to amend his complaint and to describe what each defendant did to violate his Constitutional rights and to describe the injury he sustained as a result.  He was also directed to amend his complaint to allege facts to demonstrate that the use of force was a violation of his Constitutional rights and not an appropriate exercise of force under the circumstances; he was also directed to amend his complaint to state whether any criminal charges or prison disciplinary charges related to the incident in question were filed. [Doc. 5]

On January 8, 2014, he submitted a response to the order.  Therein he alleged fault on the

2

part of Sheriff May because the prison is "his facility and he knows he has a malfeasance in office which is a schedule I Rule violation..."  He alleged that Warden Fredericks was liable for failing to respond to plaintiff's grievances and for thus violating his rights to freedom of speech and due process and his right to petition for redress.  He alleged that Lt. Crane "is a malfeasance" who "abused his authority on several occasions with other inmates..." He also sued Lt. Crane for the use of excessive force "because the use of Foxx Mace was abused and unnecessary." He alleged that defendant Gaskill Tazed him "when there was no need to." Finally, he alleged that Capt. Diel was liable for failing to contact plaintiff's family when he was hospitalized, for placing him in administrative segregation "for several days," and for revoking his telephone privileges. He also claimed that unnamed corrections officials have tampered with his mail but failed to allege any factual support for that claim. [Doc. 6]

## *Law and Analysis*

### *1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his  complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke*

3

*v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

### 2. Supervisory Officials

As previously noted, plaintiff alleged fault on the part of Sheriff May because the prison is "his facility and he knows he has a malfeasance in office which is a schedule I Rule violation..."   It appears that he sued May in his supervisory capacity.  However, under §1983, "[s]upervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; and (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993). In other words, "[v]icarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897, 104 S.Ct. 248, 78 L.Ed.2d 236 (1983).  Thus, to the extent that plaintiff seeks to name a supervisory official such as Sheriff May, as a defendant, he must allege facts sufficient to demonstrate either personal involvement or the implementation of unconstitutional policies by the defendant.  This he has not done, and therefore his claims against Sheriff May must be dismissed for failing to state a claim for which relief may be granted.

4

*3. Grievances*

Plaintiff faults Warden Fredericks for failing to respond to his grievances. In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate constitutional *minima. See Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (holding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim").[1] Since there is no constitutionally protected right to participate in a prison grievance procedure, plaintiff's complaint, insofar as he complains about the lack of an available grievance system,  fails to state a claim for which relief may be granted.

---

[1] See also *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005) (Prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction; any alleged due process violation arising from the alleged failure to investigate prisoner grievances is indisputably meritless); (see also *Jones v. North Carolina Prisoners' Labor Union, Inc*., 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required);  *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substantive right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991 *(per curiam)* (concluding regulations providing for administrative remedy procedure do not create liberty interests in access to that procedure); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

*4. Excessive Force*

Plaintiff faults defendants Crane and Gaskill for their use of excessive force against him. This excessive force claim arises under the Eighth Amendment's prohibition against cruel and unusual punishment. In evaluating an excessive force claim under the Eighth Amendment the issue is whether the force alleged was applied maliciously and sadistically for the very purpose of causing harm, or whether the application of force was merely a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The factors to be considered in determining whether the force applied was excessive include (a) the extent of injury sustained, if any, (b) the need for the application of force, (c) the relationship between the need for force and the amount of force utilized, (d) the threat reasonably perceived by prison officials, and (e) any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

Here, plaintiff virtually concedes that the initial use of force – the application of Foxx Mace – was the result of his failure to heed the officer's command to open his hand during the shake-down search. He more or less concedes that Driskill's use of the Tazer was the result of plaintiff's striking out at the can of mace wielded by defendant Crane. In other words, plaintiff has not established through his pleadings that the use of force was malicious and sadistic; indeed, based upon the facts alleged, it appears that the force was applied to maintain and restore prison discipline and therefore should be dismissed for failing to state a claim for which relief may be granted.[2]

_____

[2] Further, plaintiff was specifically directed to allege the extent of injury, if any, he sustained as a result of the complained of force. This he failed to do. Finally, plaintiff was directed to allege whether any criminal charges or prison disciplinary charges related to the

**5. Due Process**

Plaintiff also implies that his due process rights were violated by Capt. Diel who failed to

contact plaintiff's family when he was hospitalized, placed him in administrative segregation "for

several days," and revoked his telephone privileges for an unspecified period of time.

By virtue of a valid criminal conviction and subsequent legal confinement, a prisoner

loses his expectation of liberty. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49

L.Ed.2d 451 (1976). This aspect of plaintiff's claim, taken as true for the purposes of this

Report, fails to state a claim for which relief might be granted pursuant to 42 U.S.C. §1983

because "[t]he Due Process Clause does not protect every change in the conditions of

confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S.

472, 478, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The federal jurisprudence holds that, while

the states may under certain circumstances create rights that implicate Due Process, such rights

are limited to freedom from restraints that impose "atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Thus, relying on *Sandin*, the Fifth Circuit has found that " 'administrative segregation,

without more, simply does not constitute a deprivation of a constitutionally cognizable liberty

---

incident in question were filed. He was instructed that his suit may be barred by the *Heck*
Doctrine. *See Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)
(holding that dismissal is required when a state prisoner whose conviction or sentence has not
been declared invalid seeks damages in a § 1983 suit and a judgment in favor of the plaintiff
would necessarily imply the invalidity of his conviction or sentence); and *Hudson v. Hughes*, 98
F.3d 868, 872-73 (5th Cir.1996) (holding an excessive-force claim was barred by *Heck* where it
would imply the invalidity of a conviction for battery). Plaintiff failed to respond to this
directive. Therefore, should he object to this Report, as is his right, he should provide a
description of the injury sustained and whether or not he was subsequently convicted of a
criminal offense or disciplinary rules violation as a result of the incident in question.

interest.' "" *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir.1996) (quoting *Luken v. Scott*, 71 F.3d 192, 193 (1995)) (rejecting claim that confinement in administrative segregation violated prisoner's due process rights). The Fifth Circuit has also rejected a state prisoner's claim that the additional restrictions imposed on those in administrative segregation violated his due process rights. *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir.1998) (per curiam). Therein the court stated "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for constitutional claim because it simply does not constitute a deprivation of a constitutionally cognizable liberty interest." *Id.* at 580 (quotation omitted).

In other words, when a prisoner is lawfully incarcerated, he loses many of the rights and privileges that most citizens enjoy. *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir.1997). Thus, "... mere[ ] changes in the conditions of [ ] confinement ... do not implicate due process concerns." *See Madison*, 104 F.3d at 768; see also *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir.1999) ("Inmates have no protectable property or liberty interest in custodial classifications."). Plaintiff's claims regarding his brief confinement in administrative segregation, the failure to apprise his family of his hospitalization, and his loss of telephone privileges are not "atypical" and thus his complaint fails to state a claim for which relief might be granted.

**Conclusion and Recommendation**

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved

8

by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.**  ***See, Douglass v. United Services Automobile Association***, **79 F.3d 1415 (5th Cir.  1996).**

In Chambers, Monroe, Louisiana, February 18, 2014.

_____

**KAREN L. HAYES**
**UNITED STATES MAGISTRATE JUDGE**